IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MARIO A. RODRIGUEZ, | : | Case No. 3:11-cv-282 |
| Petitioner, | : | District Judge Walter H. Rice |
| | | Magistrate Judge Michael J. Newman |
| vs. | | |
| WARDEN, SOUTHERN OHIO CORRECTIONAL FACILITY, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION[1]

Pursuant to 28 U.S.C. § 2254, Petitioner Mario A. Rodriguez ("Petitioner" or "Rodriguez") brings this petition for a writ of *habeas corpus*. He pleads two grounds for relief:

> GROUND ONE: A new trial may be granted pursuant to Crim. Rule 33(A), if the defendant is deprived of his Sixth Amendment right to be represented by competent counsel.
>
> Supporting Facts: The defendant was prejudiced by trial counsel's ineffectiveness and lack of duty to prepare a defense when the evidence caused for one, thereby violating the defendant's right to trial.
>
> GROUND TWO: In considering a motion for a new trial, a court must determine the merits of a motion to suppress if counsel is alleged to be ineffective due to a failure to file a motion to suppress.
>
> Supporting Facts: If a court considers a motion for a new trial for ineffective counsel the court must consider counsel's actions and the causes of action to determine if the moving party has merit for a new trial for ineffective counsel. In this case the court erroneously held that counsel was not ineffective for not requesting the suppression hearing and the Appellate Court held that a new trial was not the remedy for counsel's actions. The defendant was prejudiced by the court's rulings.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Doc. 2 at PageID 5 (capitalization and punctuation altered).

## I. BACKGROUND

In May 2009, a jury found Petitioner guilty of possession of heroin (in excess of 250 grams) and possession of criminal tools in the Preble County, Ohio Common Pleas Court. Doc. 6-2.  He was sentenced to a total of 10 years of imprisonment,[2] and is currently serving that sentence in the London Correctional Institution.  Doc. 6-8.

The Second District Ohio Court of Appeals summarized the facts underlying Petitioner's convictions as follows:[3]

>    On March 7, 2009, Trooper Darren Fussner of the Ohio Highway Patrol observed a vehicle driven by appellant traveling 74 M.P.H. in a 65 M.P.H. zone along Interstate 70. The trooper checked the vehicle's speed again once it passed; noting that the vehicle slightly slowed to 71 m.p.h. Trooper Fussner pursued the vehicle. Once he caught up to the vehicle, Trooper Fussner stated that the vehicle had slowed and was traveling in the left lane behind a semi truck. He ran the registration and determined that the vehicle was a rental car with a Colorado license plate. Appellant's vehicle changed lanes, increased its speed, and passed the semi. The trooper once again activated his radar unit and found the vehicle to be traveling between 71 and 74 m.p.h.
>    Trooper Fussner activated his overhead lights to effectuate a traffic stop. He noted that appellant immediately put on his right hand turn signal but "kind of just kept going in the left-hand lane without really moving over to the right lane. It just kept going and going." The trooper testified that the vehicle finally moved over to the right lane, but "kept going and going and going." The vehicle then moved to the berm, but kept "going down the berm." It took appellant approximately 50 seconds to pull over the vehicle and bring it to a stop. The trooper testified that in his 20 years of experience, the amount of time it took for appellant to pull over was unusual for a traffic stop.
>    After the vehicle stopped, the trooper observed a lot of movement from the driver and passenger in the vehicle, which put him "more at an unease." After exiting his cruiser, the trooper remained back on the left side of his vehicle as a precautionary measure. The trooper waited for appellant to make eye contact with him in the rearview mirror and then waived appellant out of the vehicle to come

---

[2] The heroin possession count was subject to a mandatory ten-year prison term. *See* doc. 6-8.
[3] Those factual findings are presumed to be correct because Petitioner has not rebutted that presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Girts v. Yanai*, 501 F.3d 743, 749 (6th Cir. 2007).  Moreover, the Court carefully reviewed the state court record -- including the transcripts for the preliminary hearing, the pretrial and trial proceedings, and the motion for a new trial hearing -- and notes the Court of Appeals' findings are supported by the record.

toward him. Appellant then got out of the vehicle without shoes on, leaving his door open, and keeping his back toward the officer. The trooper noted that appellant reached back into the car on two occasions. The trooper testified that he was "very uncomfortable that there might be an attack imminent" and, as a result, he moved over to the right front of the cruiser. As he was moving to the other side of the cruiser, appellant lifted his shirt over the waistband on his pants to straighten it out and brushed himself down. The trooper claimed he was "uncomfortable, and I thought possible that he could have had something in his waistband that he was trying to hide."

Once appellant approached, appellant reached toward the officer to shake his hand. The trooper shook appellant's hand and noticed that it was completely black. He also noticed that appellant's shirt also had a black substance all over the front as well. Trooper Fussner explained to appellant the basis for the traffic stop and made inquiries regarding his license, the rental of the vehicle as well as appellant's origin and destination. Appellant stated that he was from San Ysidro, California and headed with the passenger in the vehicle to visit friends in Manhattan.

The trooper asked appellant to move to the back of the cruiser and asked if he would mind being patted down for weapons. According to the trooper, appellant shook his head "that it was okay, and actually reached out, the door was open, he reached out and grabbed my seat * * * place[d] his hands on my seat and he actually steps back and spreads his legs, waits for me to start patting him down." Appellant disputes that he consented to the pat-down.

During the pat-down, the officer testified that he felt a "very large, hard object" in appellant's waistband. The officer believed, in his experience, that it was either "a weapon or some kind of contraband. There's no other reason to have something like that in your waistband." The trooper immediately handcuffed appellant, turned him around, lifted his shirt, and saw two black packages. The packages were shaped like soles of a shoe and covered in black carbon paper. After removing the items, Trooper Fussner asked whether the items were cocaine or heroin. Appellant responded, "I think so, I don't know."

After securing appellant in the cruiser, Trooper Fussner drew his weapon and walked toward the passenger, who was still seated in the vehicle. As he approached the vehicle, the officer called for back-up. The trooper called the passenger from the vehicle and required him to lay face down on the ground until back-up arrived. The passenger was placed in handcuffs and, following a search, found similar packages in his shoes. Trooper Shaun Smart read appellant his Miranda rights.

The troopers conducted a NIC test on the scene and determined that the packages contained heroin. The troopers proceeded to search the vehicle where they found a pair of shoes which had the insoles removed and three cell phones. About an hour after the stop, Trooper Smart spoke with appellant. Appellant acknowledged that he and the passenger had been paid several thousand dollars to transport the narcotics.

*State v. Rodriguez*, No. CA2009-09-024, 2010 Ohio App. LEXIS 1614, at *1-5 (Ohio Ct. App.

3

May 3, 2010) (doc. 6-15 at PageID 348-51).

## A.  Motion for New Trial

Shortly after his trial, Petitioner filed a motion for a new trial, through the assistance of newly retained counsel.[4]  *See* docs. 6-4; 6-6.  In the motion, Petitioner argued that the search, seizure and questioning by police were unconstitutional, and his trial attorney was ineffective for failing to file a motion to suppress.  *See* docs. 6-4; 6-6.  After a hearing, *see* doc. 6-31, the trial court denied his motion on July 17, 2009.  Doc. 6-7.

## B.  Direct Appeal

With the assistance of counsel, Petitioner was granted leave to file a delayed appeal to the Twelfth District Court of Appeals.  *See* docs. 6-9; 6-10; 6-11.  Petitioner raised the following assignments of error:

1. The trial court abused its discretion when denying Appellant's motion for a new trial;

2. Appellant was denied his constitutional right to effective assistance of counsel when counsel failed to file a motion to suppress;

3. The trial court erred in holding both the search and seizure of Appellant were constitutional; and

4. The trial court erred in finding Appellant's 5th Amendment constitutional rights were not violated when the officer had him in custody and interrogated him without reading him Miranda warnings.

Doc. 6-12 (capitalization altered).  On May 3, 2010, the Court of Appeals overruled all assignments of error, affirming the trial court's judgment.  Doc. 6-15.

---

[4] On the first day of trial, outside the presence of the jury, Petitioner requested a continuance of his trial so that he could hire a new attorney because his current attorney (Carol Lindstrom, Esq.) had not complied with his request to file a motion to suppress.  *See* doc. 6-30 at PageID 477-81.  The court denied his request.  *See id.*  A new attorney (Jon Paul Rion, Esq.) -- who had been hired by Petitioner's family the weekend before the trial -- then made an appearance. *See id.* at PageID 481-85.  The court also denied Mr. Rion's request to continue the trial.  *See id.*  Ms. Lindstrom represented Petitioner during his trial.  *See* doc. 6-31.  Mr. Rion represented Petitioner with regard to his motion for a new trial and on direct appeal.  *See, e.g.,* docs. 6-4, 6-12.

Petitioner, through counsel, timely appealed to the Ohio Supreme Court, raising the following two propositions of law:

1. A new trial may be granted, pursuant to Crim. R. 33(A), if the Defendant is deprived of his Sixth Amendment right to be represented by competent counsel; and

2. In considering a motion for a new trial, a court must determine the merits of a motion to suppress if counsel is alleged to be ineffective due to a failure to file a motion to suppress.

Doc. 6-17 at PageID 379.  On September 29, 2010, the Ohio Supreme Court declined to exercise jurisdiction over Petitioner's case and dismissed his appeal.  Doc. 6-19.[5]

## II.  ANALYSIS

### A.  AEDPA Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when the state court decides a federal constitutional claim on the merits, the federal *habeas* court must defer to the state court decision unless: (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).  A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result

---

[5] Petitioner also filed a motion for resentencing due to a clerical error in the judgment of sentence.  Doc. 6-20.  Finding it unnecessary to re-sentence Petitioner, the court entered a *nunc pro tunc* amended judgment entry instead.  Docs. 6-22, 6-23.  Petitioner appealed this ruling to the Ohio Court of Appeals, and it was dismissed.  *See* doc. 6-24.  *See also State v. Rodriquez*, No. 2011 CA 080008 (Ohio Ct. App. Jan. 13, 2012).  This proceeding is not relevant to Petitioner's federal *habeas* claims now before this Court.

different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08. "A state court's determination that a claim lacks merit precludes *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 786 (2011) (citation omitted).

In reviewing a *habeas* petitioner's claims under 28 U.S.C. § 2254(d)(1), the Court is "limited to the record that was before the state court." *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011). Further, a state court's factual findings are presumed correct unless the petitioner rebuts them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This statutory presumption of correctness also extends to factual findings made by a state appellate court's review of the trial record. *Girts*, 501 F.3d at 749.

Under principles of comity, the state courts should have the first opportunity to hear *habeas* claims. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45 (1999). Accordingly, a federal *habeas* petitioner must exhaust his or her state court remedies -- by fairly presenting his or her constitutional claims to the state's highest court -- before raising them in federal court. 28 U.S.C. § 2254(b); *O'Sullivan*, 526 U.S. at 844-45. If (1) the state court rejected the petitioner's claim based on his or her failure to comply with a state procedural rule, or (2) the petitioner failed to exhaust his or her state court remedies and no avenue of relief remains open, or it would otherwise be futile to pursue the state remedies, the petitioner has waived that claim for *habeas* review under the procedural default doctrine. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

### B.  Grounds One and Two

Although Petitioner lists two grounds for relief in his *habeas* petition, they raise the same issues.  In both grounds, Petitioner claims (1) the trial court's denial of his motion for a new trial was erroneous, and (2) his trial counsel was ineffective for failing to file a motion to suppress. *See* Doc. 2 at PageID 5; doc. 7.[6]

Petitioner's first claim -- challenging the correctness of the trial court's denial of his motion for a new trial -- is not a cognizable federal *habeas* claim.  *See Pudelski v. Wilson*, 576 F.3d 595, 610-11 (6th Cir. 2009).  Federal *habeas* corpus is only available to correct violations of federal law.  28 U.S.C. § 2254(a).  "[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Accordingly, this Court cannot review this claim to the extent it is premised on state law; but, it can review this claim for constitutional error -- *i.e.,* whether or not the denial of Petitioner's motion amounted to a violation of his federal due process rights.  *Pudelski*, 576 F.3d at 611.

To establish a constitutional due process claim, Petitioner must establish that the trial court's ruling was "'so egregious' that it violated his right to a fundamentally fair trial." *Id.* Petitioner has failed to meet that burden.  The court held a hearing on his motion for a new trial during which the arresting police officer, Petitioner's trial attorney, and Petitioner himself testified. Doc. 6-31.  Following that hearing, the trial court issued a reasoned opinion denying his motion for a new trial.  Doc. 6-7.  Not only did the trial court decide to entertain his motion despite it being untimely, but it broadly construed Ohio Criminal Rule 33(A) as including

---

[6] Indeed, in his Traverse, Petitioner literally copies most of the language used in support of his first ground for relief and pastes it in the second part of his memorandum in support of his second ground for relief.  *See* doc. 7.

7

ineffective assistance of counsel as an available ground to grant a new trial.[7] *See id. Accord Pudelski*, 576 F.3d at 610-11 (denying a *habeas* petitioner's claim -- that an Ohio court's denial of his motion for a new trial was erroneous and an abuse of discretion -- on the grounds that it was not a cognizable federal *habeas* claim, and the petitioner did not show that the court's ruling violated his due process rights).

Petitioner's second claim -- that his Sixth Amendment right to counsel was violated due to his attorney's failure to file a motion to suppress -- is a proper federal *habeas* claim, and was fully exhausted in the state courts. The Ohio Court of Appeals denied this claim on the merits as follows:

> In his second assignment of error, appellant argues that his trial counsel was ineffective for failing to file a motion to suppress on his behalf.
> In order to establish ineffective assistance of counsel, appellant must show that his trial counsel's performance was both deficient and prejudicial. *Strickland v. Washington* (1984), 466 U.S. 668, 687-688, 693, 104 S.Ct. 2052, 80 L. Ed. 2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. Specifically, appellant must show that his counsel's performance "fell below an objective standard of reasonableness," and that there is a reasonable probability that but for his counsel's deficient performance, the outcome of the trial would have been different." *Strickland* at 688, 693-694. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional conduct;" as a result, a reviewing court's "judicial scrutiny of counsel's performance must be highly deferential." Id. at 689.
> A reviewing court is not permitted to use the benefit of hindsight to second-guess the strategies of trial counsel. *State v. Hoop*, Brown App. No. CA2004-02-003, 2005 Ohio 1407, ¶20. A criminal defendant must overcome a presumption that his counsel's actions or inactions "might be considered sound trial strategy." *Strickland* at 689. Even debatable trial strategies and tactics do not constitute ineffective assistance of counsel. *Hoop* at ¶20. Further, "it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Bradley* at 142.

---

[7] Ohio Criminal Rule 33 enumerates six grounds for granting a new trial, including: (1) "irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court"; (2) "misconduct of the jury, prosecuting attorney, or the witnesses for the state"; (3) "accident or surprise which ordinary prudence could not have guarded against"; (4) insufficient evidence; (5) "error of law occurring at the trial"; and (6) newly discovered material evidence. Ohio Crim R. 33(A). The trial court broadly construed Petitioner's claim as being included in the first ground for relief. *See* doc. 6-7 at PageID 190.

>A failure to file a motion to suppress is not per se ineffective assistance of counsel. *State v. Madrigal* (2000), 87 Ohio St.3d 378, 389, 2000 Ohio 448, 721 N.E.2d 52, citing *Kimmelman v. Morrison* (1986), 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L. Ed. 2d 305. "To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question." *State v. Brown*, 115 Ohio St.3d 55, 2007 Ohio 4837, P65, 873 N.E.2d 858, citing *State v. Adams*, 103 Ohio St.3d 508, 2004 Ohio 5845, P35, 817 N.E.2d 29. See, also, *State v. Gibson* (1980), 69 Ohio App.2d 91, 95, 430 N.E.2d 954 (finding where there is no justification for filing a suppression motion, appellant has not met the burden of showing his counsel's performance was deficient).
>
>Moreover, where the failure to file a motion to suppress represents a reasonable trial strategy or a "tactical judgment," a claim of ineffective assistance must fail. *State v. Adams*, 103 Ohio St.3d 508, 2004 Ohio 5845, P31-33, 817 N.E.2d 29; *State v. Downing*, Summit App. No. 22012, 2004 Ohio 5952, P20-21; *State v. Newman*, Ottawa App. No. OT-07-051, 2008 Ohio 5139, P29. See, also, *State v. Benge* (Dec. 5, 1994), Butler App. No. CA93-06-116, 1994 Ohio App. LEXIS 5419, 1994 WL 673126, *22.
>
>The record demonstrates that the decision of appellant's original trial counsel to not file a motion to suppress in this case was a matter of trial strategy. In denying appellant's Crim. R. 33 motion for a new trial, the trial court found that appellant had been offered a plea bargain for a reduced charge that would have resulted in a four-year sentence instead of a ten-year sentence under the original charges. Yet, if appellant had filed a motion to suppress and the trial court denied it, the plea bargain would no longer be available. The passenger in the vehicle who had also been found with heroin filed a motion to suppress in his case based upon the same set of facts. The trial court denied the "co-defendant's" motion. With knowledge of the plea offer and the denial of the "co-defendant's" motion, appellant's original trial counsel advised appellant that any motion to suppress would be baseless and unsuccessful. We find no evidence that the conduct of appellant's original counsel was deficient. Further, as we have discussed above, appellant suffered no prejudice in this matter.

Doc. 6-15 at PageID 357-59.

The Ohio Court of Appeals' opinion was neither an unreasonable application of, nor contrary to, clearly established Supreme Court case law. The court correctly identified and laid out the two-prong *Strickland v. Washington* test -- requiring a defendant to demonstrate that (1) his counsel's performance was deficient, and (2) he was prejudiced as a result -- in analyzing Petitioner's Sixth Amendment ineffective assistance of counsel claim.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under the *Strickland* standard, "a court must indulge a

9

strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689. To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In this context, where the petitioner alleges his counsel was ineffective for failing to file a motion to suppress, "the defendant must also prove that his Fourth Amendment [and Fifth Amendment] claim[s are] meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Henness v. Bagley*, 644 F.3d 308, 317-18 (6th Cir. 2011) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

Further, the Supreme Court recently emphasized that a federal *habeas* court should apply two levels of deference in evaluating ineffective assistance claims:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal *habeas* courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 131 S. Ct. at 788 (internal citations omitted).

The Court of Appeals reasonably found that the decision of Petitioner's trial counsel -- not to file a motion to suppress -- was "sound trial strategy." Petitioner's counsel reasonably made such a determination under the circumstances -- *i.e.,* if a motion to suppress were filed, the

10

state's plea offer would no longer be available and Petitioner would face a mandatory ten-year sentence if the motion to suppress were denied.[8] In weighing those options, Petitioner's counsel sufficiently investigated the circumstances surrounding his search and seizure, and concluded that a motion to suppress would likely be denied. *See* doc. 6-31 at PageID 735-38. To that end, in light of the strong evidence against Petitioner, it was reasonable trial strategy for his counsel to recommend that he take the state's plea offer instead of filing a motion to suppress. *Cf. Premo v. Moore*, __ U.S. __, 131 S. Ct. 733, 738-46 (2011) (finding counsel was not ineffective under *Strickland* for conducting plea negotiations before filing a motion to suppress).

Additionally, the Ohio Court of Appeals reasonably found that Petitioner failed to satisfy the prejudice prong of *Strickland*. The Court of Appeals reviewed the facts surrounding the police officer's search and seizure, and determined that no Fourth Amendment violation occurred.[9] The court held as follows:

> The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio* (1968), 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L. Ed. 2d 889. "Once a lawful stop has been made, the police may conduct a limited protective search for concealed weapons if the officers reasonably believe that the suspect may be armed or a danger to the officers or to others." *Lawson* at ¶62. To justify a pat-down under *Terry*, "the

---

[8] The Court notes that it reviewed the Supreme Court cases cited by Petitioner in his supplemental filing -- *Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376 (2012); and *Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399 (2012) -- but neither case changes the Court's recommendation. *See* doc. 8. First, these cases are inapplicable because they were issued after the Ohio Court of Appeals' 2010 opinion. *See Bunch v. Smith*, 685 F.3d 546, 549 (6th Cir. 2012) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S. Ct. 38, 45 (2011)). ("[C]learly established Federal Law, [as defined in 28 U.S.C. § 2254(d)(1),] means the law that existed at the time of 'the last state-court adjudication on the merits'"). Second, these Supreme Court cases are inapplicable to Petitioner's case. In *Lafler*, defense counsel erroneously advised the defendant to reject a plea offer based on an incorrect legal rule -- *i.e.,* that the defendant could not be convicted of assault with intent to murder because the victim was shot below the waist. *See Lafler*, 132 S. Ct. at 1383. In *Frye*, the defense counsel failed to communicate a plea offer to the defendant. *Frye*, 132 S. Ct. at 1404-05. To that end, these cases have no bearing on Petitioner's *habeas* case.

[9] The Ohio Court of Appeals determined that Petitioner failed to properly raise his Fourth and Fifth Amendment claims -- contesting his search, seizure and questioning by police -- at the trial level. *See* doc. 6-15 at PageID 354. Therefore, the court reviewed these claims for plain error. *See id.* AEDPA deference still applies when the state court reviews a case for plain error. *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009).

11

police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* at 27. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. See, also, *State v. Smith* (1978), 56 Ohio St.2d 405, 407, 384 N.E.2d 280.

Based on the totality of the circumstances, Trooper Fussner articulated a reasonable basis to believe that appellant may be armed and a danger to the officer. After activating his overhead lights, Trooper Fussner testified that appellant took an unusually long amount of time to stop his vehicle. Once the vehicle was stopped, the trooper observed a lot of movement from the driver and passenger in the vehicle. Appellant then got out of the vehicle without shoes, left his door open, and kept his back toward the officer. The trooper stated that appellant reached back into the car on two occasions before approaching. Appellant lifted his shirt over the waistband of his pants and brushed himself down before reaching the officer.

Although a *Terry* frisk is confined to a pat-down of the person's outer clothing to discover whether any "guns, knives, clubs, or other hidden instruments for the assault of the police officer" are present, if the officer discovers contraband based upon the plain feel of the object, no constitutional violation has occurred. *Minnesota v. Dickerson* (1993), 508 U.S. 366, 375-376, 113 S.Ct. 2130, 124 L. Ed. 2d 334. Under the plain-feel doctrine, an officer conducting a pat-down for weapons may lawfully seize an object if he has probable cause to believe that the item is contraband. *State v. Phillips*, 155 Ohio App.3d 149, 2003 Ohio 5742, ¶41-42, 799 N.E.2d 653. The "incriminating character" of the object must be "immediately apparent" and the officer may not manipulate the object to determine its incriminating nature. *Dickerson* at 375-376.

Upon frisking appellant, Trooper Fussner testified that he felt a large, hard object in the waistband of appellant's pants. Trooper Fussner stated immediately upon feeling the object he knew it was "a weapon or some kind of contraband. There's no other reason to have something like that in your waistband." After feeling the item he immediately handcuffed appellant, pulled up appellant's shirt, and removed the packaged drugs.

As at the trial level, appellant submits Lawson as primary support that the search and seizure in this case was unconstitutional. Yet, in *Lawson*, the Second Appellate District correctly granted the motion to suppress because the officers could not identify the nature of the contraband based upon plain feel. 180 Ohio App. 3d 516, 2009 Ohio 62 at ¶40, 906 N.E.2d 443. The officer in Lawson manipulated the lump in the defendant's pocket, asked other officers to manipulate the substance and had to question the defendant about the object before it could be identified as contraband. Id. The Second District concluded that the manipulation and extended detention of Lawson was unreasonable. Id. In this case, there was no indication that Trooper Fussner manipulated the heroin or detained appellant for an extended period of time to identify the large packages as contraband.

Doc. 6-15 at PageID 354-56.

The Ohio Court of Appeals reasonably determined that the police officer: (1) articulated sufficient reasons to justify his "pat-down" of Petitioner, *see* doc. 6-31 at PageID 718-20; *see also Terry v. Ohio*, 392 U.S. 1, 21 (1968); and (2) legally seized the packages from Petitioner's waistband, as their contraband identity was immediately apparent to the officer. *See* doc. 6-31 at PageID 720-21; *see also Minnesota v. Dickerson*, 508 U.S. 366, 374-76 (1993).

The Ohio Court of Appeals also addressed Petitioner's *Miranda* claim, and reasonably denied that claim for the following reasons:

> We next turn to the trooper's questioning of appellant about the package without first administering *Miranda* warnings. Once Trooper Fussner removed the packages from appellant's waistband, he asked appellant whether it was cocaine or heroin. Appellant responded, "I think so, I don't know."
> Statements made during the custodial interrogation of a defendant may not be admitted into trial where *Miranda* warnings have not been given. See *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed. 2d 694. Custodial interrogation occurs when there is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444.
> Even if Trooper Fussner's question asking appellant about the type of substance may have been improper, any error in admitting the statement was harmless because appellant suffered no prejudice. *State v. Rivera-Carillo*, Butler App. No. CA2001-03-054, 2002 Ohio 1013, *16. Trooper Fussner had already recovered the packaged drugs before asking appellant what type of drug was in the packages. Further, a lab test confirmed that the packages contained heroin. *State v. Perkins* (1985), 18 Ohio St.3d 193, 196, 18 Ohio B. 259, 480 N.E.2d 763; *Nix v. Williams* (1984), 467 U.S. 431, 446, 104 S. Ct. 2501, 81 L. Ed. 2d 377. The outcome of the trial would not have been different even if appellant's response would have been suppressed.

Doc. 6-15 at PageID 356-57.

In sum, even assuming, *arguendo*, that Petitioner's counsel was deficient for not filing a motion to suppress (although there is no evidence in the record to support such an assertion), Petitioner's ineffective assistance of counsel claim nonetheless fails because he has failed to

13

show how he was prejudiced by that error. There is no reasonable likelihood that his motion would have succeeded with regard to his Fourth Amendment claims, given that both the trial court and the Ohio Court of Appeals denied those claims on the merits. *See* doc. 6-7, 6-15 at PageID 354-56. As for his Fifth Amendment *Miranda* claim, there is no reasonable probability that the jury verdict would have been different even had his statement to the officer been suppressed. The packages were seized before he made that statement, and it was later verified that the packages contained cocaine. Accordingly, the Ohio Court of Appeals reasonably determined that Petitioner's Sixth Amendment right to counsel was not violated.[10] *Accord Henness*, 644 F.3d at 318-19 (finding counsel was not ineffective under *Strickland* for failing to bring a meritless motion to suppress).

Finally, though Petitioner did not expressly raise his Fourth and Fifth Amendment claims as independent grounds for relief in his *habeas* petition, the Court notes that they are procedurally defaulted. The Ohio Court of Appeals determined that Petitioner waived those claims by not properly raising them at the trial level. *See* doc. 6-15 at PageID 354. The Ohio Court of Appeals' plain error review of those claims was an enforcement of that procedural bar. *See Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006). *Accord Hunt v. United States*, No. 2:09-cv-419, 2010 U.S. Dist. LEXIS 97450, at *14 (S.D. Ohio Sept. 17, 2010) (holding that a Fourth Amendment *habeas* claim was procedurally barred for failure to file a motion to suppress). Further, Petitioner has failed to establish cause and prejudice to excuse his procedural default. *See Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). Ineffective assistance of trial counsel cannot serve as cause and prejudice because, as discussed *supra*, that argument has no

---

[10] Petitioner also briefly complains that his trial counsel was ineffective because, in an attempt to persuade him to take the state's plea offer rather than proceeding to trial, she advised him that the jury would likely find the police officer's testimony more credible than his. *See* doc. 7 at PageID 758. Petitioner cannot show how he was prejudiced by such an advisement because he decided to proceed with trial anyway.

14

merit. Nor does the record support a finding that Petitioner might be "actually innocent" or that a miscarriage of justice occurred.[11] *See Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir. 2011). Accordingly, to the extent Petitioner seeks *habeas* relief for violations of his Fourth and Fifth Amendments, those claims should likewise be dismissed.

### III. RECOMMENDATION

Based on the foregoing analysis, it is **RECOMMENDED** that Petitioner's § 2254 petition for a writ of *habeas corpus* be **DISMISSED** with prejudice, and this case be **TERMINATED** upon the Court's docket.

Reasonable jurists would not disagree with the recommended dispositions on all grounds for relief. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Further, an appeal of an Order adopting this Report and Recommendation would not be taken in objective good faith. *See* 28 U.S.C. § 1915(a)(3); *Coppedge v. United States*, 369 U.S. 438, 445-46 (1962). Therefore, if Petitioner seeks to appeal an Order adopting this Report and Recommendation, the Court **RECOMMENDS** that Petitioner be **DENIED** a certificate of appealability and *in forma pauperis* status on such an appeal.

January 16, 2013                                    s/ **Michael J. Newman**
                                                    United States Magistrate Judge

---

[11] To the contrary, Petitioner testified at his trial and admitted knowing that he was transporting drugs. *See* doc. 6-30 at PageID 660.

15

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).